IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ARTHUR J. WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 3:04cv753-VPM |
| | )        [W/O] |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Claimant Arthur J. Williams ["Willams"] has filed this action seeking review of a final decision by the Commissioner (Doc. # 1) pursuant to 42 U.S.C. §§ 405(g). (Doc. # 1, p. 1).[1] Upon review of the record and the briefs submitted by the parties, the court concludes that the Commissioner's decision is supported by substantial evidence and is hereby affirmed.

**I.   PROCEDURAL BACKGROUND AND FACTS**

Williams' efforts to obtain disability insurance benefits began in 1994. (R. 180-83). Although he was eventually approved for benefits based on his addiction to alcohol, his benefits were later terminated in 1997 pursuant to a change in Social Security Administration ["SSA"] policies concerning disabilities associated with substance abuse. (R. 17; 250). Since then, Williams has been attempting to prove that his disability persists despite

---

[1] Williams' complaint and brief cite statutory provisions addressing supplemental income benefits, *see* 42 U.S.C. § 1383, but Williams only ever applied for disability insurance benefits pursuant to Title II of the Social Security Act. *See* 42 U.S.C. § 405.  (R. 180-83; 204-07).

abstinence from alcohol.

Williams alleged that he suffered from a number of ailments, but his chief complaint was that the pain associated with his chronic pancreatitis impedes his ability to concentrate or perform physical work. (R. 143-156). He also attributed his inability to work to anxiety, post traumatic stress disorder and morning drowsiness caused by his prescription medication. *Id.*

His first attempt to have his benefits reinstated was initially unsuccessful at the administrative level and again after a hearing before an administrative law judge ["ALJ"] (R. 814-822). The SSA's Appeals Council ["AC"] remanded the ALJ's opinion, however, because he failed to consider relevant medical records (R. 835-37). On remand, after three hearings,[2] a different ALJ determined that Williams was not entitled to disability benefits. (R. 17-37). The AC declined to review the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner. Williams then filed this timely lawsuit. (Doc. # 1).

## II.   STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." ***Miles v. Chater***, 84 F. 3d 1397, 1400 (11th Cir.

---

[2] Williams was not represented at the first hearing, which took place on 21 December 2000, and the ALJ continued the hearing in order to obtain updated medical records. (R. 108-14). At the second hearing on 30 October 2001, Williams was represented, but the attorney had been retained less than two weeks before the hearing, and the ALJ again continued the case to allow the attorney more time to prepare. (R. 117-22). The third hearing took place 25 March 2002. (R. 124-79).

1996) (citing **Bloodsworth v. Heckler**, 703 F.2d 1233, 1239 (11th Cir. 1983)).  The court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied," **Kelley v. Apfel**, 185 F.3d 1211 (11th Cir. 1999) (citing **Graham v. Apfel**, 129 F. 3d 1420, 1422 (11th Cir. 1997)).[3]  This is true despite the fact that "[s]ubstantial evidence may even exist contrary to the findings of the ALJ."  **Barron v. Sullivan**, 924 F.2d 227, 230 (11th Cir. 1991).  "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid."  **Miles**, 84 F. 3d at 1400 (citations omitted).

### III.   DISCUSSION

*A.   Standard for Determining Disability*

An individual who files an application for Social Security disability benefits must prove that he is disabled.  *See* **20 C.F.R. § 416.912 (2004)**.  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  **42 U.S.C. § 423(d)(1)(A) (2004)**.

---

[3]In **Graham v. Apfel**, 129 F. 3d at 1422, the Court of Appeals stated that:

> Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

The Social Security regulations provide a sequential evaluation process for determining whether a claimant's disability is continuing. *See* **20 C.F.R. § 404.1595**. The ALJ must evaluate the claimant's case using this sequential evaluation process. *Cf.* ***Ambers v. Heckler***, 736 F.2d 1467, 1469 (11th Cir. 1984); ***Williams v. Barnhart***, 186 F. Supp. 2d 1192, 1195 (M.D. Ala. 2002). The steps are as follows:

a. The ALJ must determine whether the claimant is working or engaging in substantial gainful activity beyond a trial work period. If he is, he is no longer disabled.

b. If not, then the ALJ must consider whether the claimant has an impairment or combination of impairments that meets or equals the severity of one of the listings found in 20 C.F.R. § 404, Subpt. P, App1. If so, then the claimant will be found disabled.

c. If not, then the ALJ must determine whether the claimant has experienced medical improvement. If the claimant's condition has not improved, then the claimant will be found disabled, unless an exception applies.[4]

d. If improvement is found, the ALJ must then determine whether the improvement is related to the claimant's ability to do work. If it is unrelated and an exception does not apply, then the claimant will be found disabled.[5]

---

[4] *See* **404.1594(f)(5); 404.1594(d)-(e)**. If an exception listed in 404.1594(d) applies, the sequential evaluation continues. **404.1594(f)(5)**. If an exception listed in 404.1594(e) applies, the claimant will be found not disabled. ***Id.***

[5] *See supra* note 4.

  e. If the medical improvement is found to be related to the claimant's ability to do work, or an exception applies, the ALJ will determine whether the claimant's impairment(s) is severe. If the claimant does not have a severe impairment, he is not disabled.

  f. If the claimant's impairment(s) is considered severe, the ALJ will determine whether the claimant can perform previous work, considering the claimant's residual functional capacity ["RFC"]. If the claimant can return to previous work, he is not disabled.

  g. If the claimant cannot return the previous work, the ALJ will determine whether the claimant can perform any work. If not, the claimant will be found disabled. If the claimant can perform jobs available in the national economy, however, he will be considered not disabled.

*See* 20 C.F.R. 1594(f).

### B. *Application of the Standard*

After finding that Williams was not engaging in substantially gainful activity and did not have "an impairment or combination of impairments that meets or equals in severity one set forth in the Listing of Impairments," the ALJ made the following relevant findings:

  a. Williams has experienced medical improvement related to his ability to work.

  b. He suffers from the following severe impairments: dysthymic disorder with symptoms of post-traumatic stress disorder, alcohol dependence in long-term

        remission, pancreatitis, gastroesophageal reflux disease, and degenerative joint disease.

    c.    Alcoholism is not a contributing factor material to the determination of disability.

    d.    Williams' subjective allegations are not credible.

    e.    Williams can perform medium work and can return to past relevant work as a janitor and kitchen worker.  In addition, Williams physical and mental RFCs are such that he can perform a significant number of jobs in the national economy.

    f.    Thus, Williams is no longer disabled within the meaning of the Social Security Act.

(R. 27-29).

Williams contended that the ALJ's decision is not supported by substantial evidence. Specifically, Williams argued that the ALJ erred by

- failing to consider other agency determinations that Williams was disabled and the medical records upon which the decisions were made;

- failing to regard as treating source opinions Global Assessment of Functioning scores.

- incorrectly applying the Eleventh Circuit's pain standard; and

- presenting the vocational examiner (VE) with an inaccurate hypothetical question.

(Doc. # 13).

Although Williams' first two contentions enjoy some merit, a close review of the entire record nonetheless compels the court to conclude that the ALJ's decision is strongly supported by substantial evidence and Williams has not been prejudiced by any alleged errors.

### C. *Other Agency Determinations of Disability*

Williams contended that the ALJ's failure to consider disability determinations previously made by the Veterans Administration ["VA"] and the United States Office of Personnel Management ["OPM"] constitutes grounds for reversal. (Doc. # 13, pp. 7-10). Without conceding that the ALJ did not consider the decisions, the Commissioner downplayed their significance and asserted that neither was binding on the Social Security Administration ["SSA"] and neither would have changed the outcome of the case. (Doc. # 16, pp. 4-6).

Disability determinations by other government or non-government agencies are not binding on the SSA, **20 C.F.R. § 404.1504**, but such decisions serve as evidence of a claimant's disability, **§ 404.1512.** In this circuit, they generally are entitled to great weight. ***Falcon v. Heckler***, 732 F.2d 827, 831 (11th Cir. 1984) (discussed *infra*); ***Brady v. Heckler***, 724 F.2d 914, 921 (11th Cir. 1984) (addressing a VA determination); ***Bloodsworth v. Heckler***, 703 F.2d 1233, 1241 (11th Cir. 1983) (addressing a determination of the Florida State Retirement Division); ***Rodriguez v. Schweiker***, 640 F.2d 682, 686 (5th Cir. Mar. 25,

1981) (stating that merely mentioning a VA determination was not sufficient to demonstrate that the ALJ had accorded it great weight);[6] *Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980) (grouping together physicians' opinions and other agency decisions regarding the ultimate issue of disability and stating that both evidence a claimant's disability and are entitled to great weight).

In *Falcon*, the court strongly suggested that the weight the SSA must give to another agency's determination depends upon how closely its definition of disability and purpose for making such an inquiry mirror the SSA's. *Falcon*, 732 F.2d at 831. Notwithstanding the fact that the state agency's definition differed from the SSA's, the *Falcon* court held that the determination was entitled to great weight. *Id.*

> [T]he Florida Supreme Court has interpreted the Florida statute in such a way that the Florida statute *operates similarly* to the definition under the federal regulations. . . . Because the two disability definitions actually are construed in a like manner, the ALJ erred in not giving great weight to the Florida agency's finding . . . .

*Id.* (citations omitted) (emphasis added).

Although the Court of Appeals has never expressly compared the VA's and SSA's disability policies by applying the general principle to VA determinations specifically, it has done so implicitly. An examination of the pertinent regulations fully bolsters the Eleventh

---

[6]In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Case 3:04-cv-00753-VPM   Document 20   Filed 05/20/05   Page 9 of 19

Circuit's position.[7]

In contrast, the Eleventh Circuit has not yet addressed an OPM determination. Unlike the VA or the SSA, which evaluates disability in the context of a person's ability to be gainfully employed in general, OPM focuses on an employee's ability "to render useful and efficient service *in the employee's current position,* or in a vacant position *in the same agency at the same grade or pay level for which the individual is qualified for reassignment.*" **5 C.F.R. 831.1202 (2005)** (defining "disabled" and "disability") (emphasis added). Thus, the OPM inquiry is extraordinarily narrow, requiring no analysis of the claimant's ability to work generally.

Furthermore, OPM's consideration of a number of extraneous factors distinguishes its disability determination from the SSA's. While it may be relevant and thus deserving of

---

[7]The VA rating schedule, with which the Commissioner takes exception (Doc. # 16, p.6), "is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as the result of or incident to military service." **38 C.F.R. § 4.1 (2005)**.

> The percentage ratings represent as far as can practically be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses *proportionate to the severity of the several grades of disability*. For the application of this schedule, *accurate and fully descriptive medical examinations are required, with emphasis upon the limitation of activity imposed by the disabling condition.*

*Id.* The fact that the VA implements a standard rating schedule and the SSA relies on a less structured analysis of a person's functional limitations is of no real consequence. *Compare* **§§ 4.1** *and* **4.10** *with* **20 C.F.R. § 404.1545 (2005)**. Causation (i.e., military service) generally is a greater concern to the VA than it is to the SSA, but both agencies correlate disability with a person's inability to engage in "substantially gainful" activity. *Compare* **38 C.F.R. § 4.16** *with* **20 C.F.R. § 404.1505(a).**

great weight in a narrower context,[8] i.e., the claimant's ability to perform a specific job, it is otherwise irrelevant to the broader SSA inquiry and commands little, if any, weight in that regard.

Williams provided undisputed evidence and testimony - at separate hearings - that he was receiving disability benefits from OPM and the VA. (R. 63, 64, 71, 104, 132-33, 293, 1120). The ALJ was therefore aware of the underlying determinations, but he failed to mention the decisions or even the simple fact that Williams was receiving disability benefits. A strong inference thus arises that the ALJ accorded the decisions no weight whatsoever. If he did not do so, his omission constituted legal error.[9]

Ultimately though, the ALJ's omission did not prejudice Williams. The ALJ exhaustively discussed all of the medical evidence in the record, as well as the testimony of Williams, two medical experts and a vocational expert. A close review of the entire record compels the court to conclude that the ALJ's thorough and thoughtful decision is strongly supported by substantial evidence, and it is unlikely that the simple fact of the VA's

---

[8] The court does not mean to suggest that the evidence the OPM relies upon in making its determination is irrelevant. On the contrary, to the extent such evidence would otherwise be considered in accordance with SSA regulations, it is relevant and should be considered if available to the ALJ.

[9] The ALJ found that Williams could return to "past relevant work as a janitor and kitchen worker." (R. 28). Although the record is not at all clear, Williams appears to have held both of these positions while working for the VA Hospital in Tuskegee and apparently his inability to perform these jobs is what led to the OPM disability determination. This is exactly the situation where the OPM determination should be accorded great weight. Nevertheless, the ALJ's failure to do so did not prejudice Williams, as the ALJ also assessed Williams' ability to perform a wide range of jobs available locally and nationally. (R. 27).

determination of disability would change the outcome of this case.[10]  *See **Kelley v. Heckler***, 761 F.2d 1538, 1540 (11th Cir. 1985) (stating that the claimant's due process rights are denied only on a showing of prejudice); ***Smith v. Schweiker***, 677 F.2d 826, 829 (11th Cir. 1982) (same).

### D.    *Global Assessment of Functioning ["GAF"] Scores*

Equating GAF scores with treating physicians' opinions, Williams argued that the ALJ erred by not treating his scores accordingly.  (Doc. # 13, p. 11); *see also* AM. PSYCHIATRIC ASS'N., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32-34 (4th Ed., text rev., 2004) ["DSM-IV"].[11]  The Commissioner responded by noting that the

---

[10] Williams also contended that the ALJ should have reviewed the actual VA rating decision as well as an examination report Williams attributes as forming the basis for the VA decision. (Doc. # 13, Attch. App. A, p. 1). Neither document was included as part of the record, but they do not constitute new evidence because they were apparently available to the claimant for nearly three years prior to his most recent SSA hearing. *See **Sherrod v. Chater***, 74 F.3d 243, 246 (11th Cir. 1996). An ALJ's failure to consider evidence not on the record warrants remand only if the claimant demonstrates that (1) the evidence is new and noncumulative; (2) the evidence is material; and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level. ***Falge v. Apfel***, 150 F.3d 1320, 1323 (11th Cir. 1998). Even assuming Williams could satisfy the first two requirements  - and he cannot -  he has failed to argue that he had good cause for not submitting it to the ALJ.  While it is arguable  –and argued by Williams– that the ALJ should specifically have ordered the rating decision itself, that form, which simply notes the level of disability the VA assigns to specific conditions, would have added nothing to the fact of the disability rating itself, of which the ALJ was aware.  The reason for excluding the examination report from Williams' regular VA  medical record is unclear, but the ALJ cannot be expected to divine the existence of medical records missing from a submission that is purportedly responsive to his requests.  The ALJ's duty to develop a full and fair record does not extend that far. Nor should the ALJ be expected, without reason, to question the comprehensiveness of the medical records sought and received.  That responsibility falls fully and firmly on the claimant's shoulders.  *Cf.* ***Ellison v. Barnhart***, 355 F.3d 1272, 1276 (11th Cir. 2003) (stating that the plaintiff has the burden to produce evidence in support of his claim).

[11] Williams also contended that the ALJ's failure to address the GAF scores specifically was in direct contravention of the earlier Appeals Council order remanding the case for rehearing. (Doc. # 13, p. 11). The Council noted that the ALJ's earlier opinion offered no evaluation of VA records dated 1 August 1996 (which "indicates a diagnosis of generalized anxiety") and 10 December 1997) which "indicates the diagnoses of post traumatic stress disorder and anxiety disorder").  The Council then ordered the ALJ, on remand, to "[g]ive consideration to the records . . . and explain the weight given to such opinion evidence."  (R. 835-36). Contrary to Williams' apparent understanding, neither the Council's opinion nor the records to which it referred mention GAF scores.  The Council obviously was concerned with the opinions that Williams experienced anxiety and post traumatic stress, both of which were prominently

11

SSA regulations do not require the ALJ to base a decision regarding mental impairments on GAF scores and that the Commissioner has concluded that the GAF "does not have a direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. 50,746 at 50,764-65, *available at* 2000 WL 1173632 (Aug. 21, 2000); (Doc. # 16, pp. 7-8).

Although the Commissioner's points are correct, they do not resolve the issue presented, i.e., whether the ALJ is required to assign the same weight or significance to GAF scores that he assigns to treating physicians' opinions. The Court of Appeals has been silent on the issue.

A GAF score is used "for reporting the clinician's judgment of the individual's overall level of functioning,"; thus it is clearly an opinion. DSM-IV, at 32. Assuming then, that the evaluator qualifies as a treating source,[12] there is no logical reason why the score should not be accorded the same treatment as other treating source opinions.

A treating source's opinion is entitled to controlling weight if it "is well-supported by

---

considerations in the ALJ's most recent opinion. The ALJ therefore complied with the Council's order, a fact further evidenced by the Council's denial of Williams' request to review his decision.

[12]The regulations define treating sources as follows:

> [Y]our own physician, psychologist or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, *an ongoing treatment relationship* with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source *with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)*. We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).

**20 C.F.R. §§ 404.1502, 416.902**. Acceptable medical sources are elsewhere defined to include, in relevant part, licensed physicians and licensed or certified psychologists. **20 C.F.R. 404.1513(a)(1)-(2)**.

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." **20 C.F.R.§§ 404.1527(d)(2)(I); 416.927(d).**   However, the regulations set forth the requisite considerations for an ALJ determination that the treating physician's opinion is not entitled to controlling weight.  They are:

    1.      Length of treatment relationship and frequency of examination;

    2.      Nature and extent of the treatment relationship;

    3.      The supportability of the opinion given;[13]

    4.      The consistency of the opinion;

    5.      Whether the treating physician is a specialist in a relevant area; and

    6.      Any other factors the claimant raises that "tend to support or contradict the opinion."

**§§ 404.1527(d)(2)-(6); 416.927 (d)(2)-(6)**.

At the very least, in the Eleventh Circuit, treating physicians' opinions are accorded "substantial or considerable weight unless good cause is shown to the contrary." ***Phillips v. Barnhart***, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting ***Lewis v. Callahan***, 125 F.3d 1436,

---

[13]  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions.  We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

20 C.F.R. § 404.1527(d)(3).

1440 (11th Cir. 1997)). Good cause exists when, for example, "the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1241. The ALJ must state his or her reasons for the weight given the opinion. **§ 404.1527(d)(2); 416.927(d)(2).**

The ALJ erred by failing to mention the GAF score assigned by Dr. Michael L. Walsh ["Walsh"] or providing reasons for assigning no weight to the score,[14] but the error was harmless. *See* ***Woodard v. Apfel***, No. Civ. A. 99-0926, 2001 WL 102354, at 9 n.3 (S.D. Ala. Jan. 8, 2001) ("Harmless errors are those that do not affect the ALJ's determination that a clamant is not entitled to benefits," citing ***Curry v. Sullivan***, 925 F.2d 1127, 1131 (9th Cir. 1990); ***Mays v. Bowen***, 837 F.2d 1362 (5th Cir. 1988); ***Gulf States Utilities Co. v. Ecodyne Corp.***, 635 F.2d 517, 520 (5th Cir. Jan. 1981)).

A GAF score is fundamentally and irredeemably flawed and is largely irrelevant to a disability determination.[15] *See* ***Whelchel v. Barnhart***, No. 02-7149, 2004 WL 613925, at

---

[14] Of all of the mental healthcare providers Williams claimed assigned a GAF score, only two can be considered treating sources: Walsh and Dr. B.A. Shah ["Shah"]. Shah, however, did not assign a score and, instead, merely referred to scores assigned by others. (R. 1072). Brenda Moon is a nurse practitioner and cannot therefore qualify as a treating source as defined by the regulations. Nor is it clear whether she is qualified to rate a patient using the GAF scale. Dr. Melinda Del Castillo ["Castillo"] saw Williams twice in approximately four years, and Dr. Kisha D. James ["James"] saw Williams only once ever. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (stating that one-time examiners were not treating physicians); *Vazquez v. Sec'y of Health and Human Svcs.*, 45 F.3d 424 (1st Cir. 1995) (declining to treat a claimant's physician as a treating source when the claimant had seen the physician only twice). The record reflects a similar relationship with Shah, but the court declines to question Williams' testimony on this point. (R. 134).

[15] A GAF score's value in making a disability determination is highly questionable, a point underscored by the fact that the manual includes an entirely separate scale for specifically assessing a person's "social and occupational disability", the Social and Occupational Functioning Assessment Scale ["SOFAS"]. *See* **DSM-IV**, at 33, 817-18. "The SOFAS is a new scale that differs from the [GAF] Scale in that it focuses exclusively on the individual's level of social and occupational functioning and is not directly influenced by the overall severity of the individual's psychological

*5 (10th Cir. 2004) (holding that the ALJ did not err in not relying on a GAF score where the score was not explained, not supported by the evidence in the accompanying medical report and "may indicate problems not necessarily related to her ability to hold a job"); ***Wilkins v. Barnhart***, No. 02-4302, 2003 WL 21462579, at * 4 (7th Cir. 2003) (discounting the GAF's usefulness in making disability determinations).

Furthermore, Walsh's score is unsupported by his accompanying record as well as the record at large, and it provides no trustworthy indication whatsoever that the score in any way relates to Williams' ability to work.[16]  Therefore, the ALJ's error did not prejudice Williams.

### E.   *Eleventh Circuit Pain Standard*

Williams next argues that the ALJ erroneously evaluated his subjective complaints

---

symptoms." ***Id.*** at 817.

In addition, the one hundred point scale, which simplifies what must be an otherwise complex task undertaken by highly educated medical professionals, smacks of arbitrariness.  The impairments or symptoms of a person with a GAF score of 41 or 50 would be considered "serious".  But the same person scoring 40 or 51 would be viewed as either significantly worse, with major difficulty, or better, with only moderate difficulty.  DSM-IV, at 34; *see also* DSM-IV, at 33 (equating "specific" scores with a range of numbers).

Finally, by default, a GAF score is temporal in nature and provides an indication of the patient's current condition only, unless specifically stated otherwise. DSM-VI, at 33.  Thus, even several scores within a twelve month period offer no indication whether a claimant's alleged disability has lasted or is expected to last twelve "continuous" months.  **42 U.S.C.A. § 416(I)(1)**; *see also* ***Walker v. Apfel***, No. 98-1201, 2000 WL 724167, at *7 (S.D. Ala. May 16, 2000) (holding that a one-time GAF score of 15 "did not establish that plaintiff has marked limitations that had lasted or would be expected to last twelve months.").

[16]Walsh, who assigned a score of 45 twice on reports that are identical down to the typographical errors, notes only that Williams is "[l]onely and depressed, in large part, because of inadequate communication skills and social skills" and has problems with "anger management . . . because anger turns inward." [sic] (R. 1054-55, 1086-87).  Walsh makes no attempt to correlate this skeletal assessment with the GAF score or the GAF score with Williams' ability to work.

of pain and drowsiness associated with his medication.[17]  (Doc. # 13, pp. 14-16).  The court disagrees.

The "pain standard", which is equally applicable to other subjective complaints, requires evidence of an underlying medical condition and either "objective medical evidence that confirms the severity of the alleged pain arising from that condition or . . . that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  **Holt v. Sullivan**, 921 F.2d 1221, 1223 (11th Cir. 1991).  After accurately stating the standard, the ALJ noted that the "objective evidence does not confirm the severity of the symptomatology alleged, nor is there is [sic] objectively determined medical condition of such severity that it could reasonably be expected to give rise to the alleged symptomatology."  (R. 25).[18]

---

[17]Williams' also quibbled with the report of a consultative examiner and the testimony of Drs. James Anderson, the SSA's medical expert, and Clemmie Palmer. (Doc. #13, p. 12-14)  His arguments misconstrue the record, and the ALJ's opinion clearly did not embrace Williams' erroneous interpretation, which merits no further discussion.

[18]The ALJ discredited Williams' complaints implicitly and explicitly, and the record clearly supports this decision.  Williams' testimony at the 2002 hearing, to a great extent, was both internally inconsistent and inconsistent with testimony from previous hearings.  One example among many involves Williams' sleep-related claims.  He testified that he was taking medication that helps him sleep at night and which has the side effect of making him drowsy in the morning. (R. 136-137).  Williams described this same medication–before his attorney cut him off–as putting him in a "real deep, deep sleep." (R. 155).  Yet, he also testified to getting only three to 3 ½ hours of sleep per night, on average. (R. 146).  The latter point was brought out during an interesting exchange between Williams and his attorney, which, again, raises serious questions as to Williams' veracity:

> Q. Okay.  Do you feel – well, again, how many hours of sleep do you get a night?
>
> A. About four or five hours.
>
> Q. How many –
>
> A. Sometime less, sometime less than that. [sic]
>
> Q. Okay.  About average?

While the ALJ's determination is supported by substantial evidence in the record,[19] Williams' arguments fail on a more fundamental level. Even if his subjective complaints were taken at face value, they would not support a finding of disability. Williams testified at the most recent hearing that since he quit drinking, he experiences abdominal pain only after eating certain foods. (R. 152). When he does feel the pain, it is not severe enough to motivate him even to go to the hospital, contrary to when he was drinking. (R. 152). The pain lasts for a few days, but during such time, he nonetheless is able to lift and carry up to and including approximately twenty-five pounds. (R.154).[20]

With respect to his drowsiness, Williams testified that one of his pills, which helps him sleep at night, makes him drowsy in the morning after waking up. (R. 137).[21] He provided no evidence that this early morning drowsiness affects his ability to work, and his records reveal that he complained of drowsiness twice in 1999 (R. 900, 892), once in 2000 (R. 864) and twice in 2001 (R. 1094, 1118). There is no evidence that Williams modified his medication, in spite of his attendees' suggestion.

---

      A.     Average about three, three-and-a-half.

(R. 146).

[19] Chronic pancreatitis may well cause severe pain, but nothing in the record indicates that Williams' condition, even when he was drinking, was as severe as he suggested in his argument. (Doc. # 13, p. 2 n.1).

[20] The ALJ included pain-related limitations in his RFC determination. (R. 28).

[21] Williams also testified that he dozes off while watching television during the day. (R. 137). While this could evidence side effects of his medication, it could just as easily illustrate a practical application of the Newtonian law of motion that bodies at rest tend to stay at rest unless and until acted upon by an outside force.

*F.     Hypothetical Question Posed to the Vocational Examiner*

Williams argues that the hypothetical question posed to the vocational examiner ["VE"] was inaccurate because the ALJ failed to include information related to Williams' daytime drowsiness and problems Williams had been having with his left foot. (Doc. # 13, p. 17-18). The Commissioner argued that the ALJ's question was accurate and supported by substantial evidence. (R. 13-14).

"In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The hypothetical question need not include impairments that are not severe or that the ALJ had "properly rejected as unsupported." *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004); *Loveless v. Massanari*, 136 F. Supp. 2d 1245, 1250-51 (M.D. Ala. 2001).

Neither drowsiness nor foot neuropathy were among Williams' severe impairments (R. 28), and Williams did not argue otherwise. Furthermore, the ALJ's conclusion on this issue is supported by substantial evidence.[22] Therefore, assuming Williams' assertions are true, the ALJ's failure to incorporate these alleged conditions would not have been error.

Williams also takes issue with the fact that the ALJ asked the VE to refer to a medical report with which the AC had previously expressed concern. (Doc. # 13, p. 17). Williams'

---

[22] Williams' records indicate that he experienced some foot numbness with no pain around the latter part of July 2001. (R. 1075, 1104, 1106). On 10 July 2001, Williams was assessed as suffering from continuous alcohol abuse with "probable alcoholic neuropathy." (R. 1106). This assessment was confirmed on 27 July 2001 (R. 1104, 1075), and a reference was made to the condition again in September, though that does not appear to signify a new complaint (R. 1094). Williams mentioned nothing of his previous foot problem during direct or cross examination at his March 2002 hearing. (R.124-58). *See also* note 21 and the accompanying text (addressing Williams' drowsiness).

18

argument is without merit. The AC found the report to be simply "less persuasive" because records not considered by the physician, Kenneth D. Strother ["Strother"], undercut his conclusion that Williams' condition was related to alcohol abuse. (R. 835-36). More importantly, the transcript makes it clear that the ALJ used Strother's report merely for ease of reference. The ALJ could just as easily have orally described what he considered to be Williams' physical limitations. The fact that he chose instead to have the VE review a written description does not constitute legal error.

## IV. CONCLUSION

Therefore, for the reasons discussed herein, it is hereby

ORDERED that the final decision of the Commissioner be and is AFFIRMED.

Done this 20th day of May, 2005.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE